Good morning, your honors. Gregory Peterson for the appellant. Good morning, Mr. Peterson. If I may. Yes, please. This is a simple case. It is a case of whether or not there was a fair to prosecute case that had gone on for over ten years diligently. The defense would like to argue health issues of one of the two principal attorneys in the case and go back to years earlier. However, that doesn't work. As of 2013, this case was still being vigorously prosecuted, albeit in an auction-type manner, where the city excluded retained counsel myself in favor of counsel I had brought in to assist me due to my illness. And that was made very clear in front of the trial judge. We objected. We filed requests for fairness hearings. This is an FLSA case. And in their own motions, they have said, Mr. Hafeef had said, that he had kept strictly between LOHH law offices of her past defendant so that Peterson would not interfere. Well, I'm retaining counsel for 2,500 LAPD cops in three cases. Counsel, forgive me. I didn't read Judge Feist's order to be tracking what you're talking about. This case has gone on for 11 years, continued endlessly. And Judge Feist made it clear on October 28, 2014. He said, well, let's put it this way. There's not going to be a complication here that's going to stop this trial. If I continue this case, you better be ready with somebody. Somebody better be ready to go because it's not going to get continued. Then on November 4, 2014, the district court said, if this case doesn't go to trial on the 28th of January, if somebody isn't here to answer ready, I will dismiss this case for lack of prosecution, period. You had more than adequate warning. Did you bring somebody else in to take the case if you were ill? Yes. We brought in two law firms to attempt to take over the case. And the court's order was, if nobody appeared, I've been doing this almost 40 years, I'd have dragged myself dead to do the opening argument and do that trial. He didn't dismiss it on the day it was set for trial. He dismissed it... But you hadn't done all the pre-trial... There was nothing missed. All the pre-trial documents were in? All the pre-trial documents we needed to submit, even though I was... the operation I had was a very serious operation. I was disabled completely. The people that made the motions on my behalf were doing it with my wife. Because I was, for over 60 days, completely disabled, as the documents show, the exhibits show, the documents from all the doctors. The final trial date was set on what date? I believe it was... the first one, I think, was January 28th or in that period. We wanted to move it a little bit because I was worried about... I was worried about my health because the doctors had said, I need 60 days to recover. He dismissed it in response to the ex parte application to continue the trial date. And he said, if you're not going to be... he just... in denying the motion, the ex parte application, he also dismissed the case for failure to prosecute, I guess because you asked for a continuance. Yes. And he read that to mean you weren't going to be available. Well, I had two lawyers that said they would be. I have a wife that's a lawyer. There was no way that that wasn't going to go. And his statement was, if somebody's not here that day... I read his statement. And I was very clear and understood that very clear. But I was also... I'd been cut from gizzard to gillet, from ear to ear, flayed the pancreas. I was very sick. I had complications, internal bleeding. So one of the points that I gathered from reading the record and Judge Fease's statements and the briefs on both sides is that your medical condition was well-known for a long period of time. And Judge Fease had wanted you to get a lawyer in who could handle the case. He wanted you to prepare ahead of time, not at the last minute. I did. In 2007, I hired her... Well, but then there was the breakdown, whatever, over the settlement and whatnot. But Judge Fease had made it pretty clear that everybody knew that you had some medical conditions and serious problems, and he wanted you to get somebody in so the case could get resolved. And when we did that, we were faced with the Christmas holidays, the Thanksgiving holidays. I saw that. A lot of people that weren't available. I finally got a friend of mine from Alabama to fly out and say he would appear. We also had Ron Hennig who said he would appear. And there was a subsequent declaration filed by Kirby Ferris that said that he would, in fact, appear on the date that the judge was considering because after that hearing, there was a problem with the date and some confusion. So that declaration was filed within hours of that. But the bottom... Yes, your argument is that if he had waited until the day of trial and you didn't show up or somebody came in and asked for a continuance, he could have said, no, I told you to be ready to go and you're not ready to go today, so case is dismissed or failure to prosecute. You would acknowledge you'd be really in a difficult position. If I didn't have anybody there to start it, yes. But that wasn't my understanding, and I was not... You have to understand, I was, as the declarations stated, I was severely disabled because of complications and bleeding. Dr. Bowie and Dr. Shalani's medical report. Well, the difference there is part of these are from Vietnam. I understand. To say that I've known about these for years, I've known about these since Vietnam. My only point is that the record here demonstrates that everybody kind of knew that you were having some health complications, so let's let it go at that. And in 2007, when I started having complications due to a chronic inflammatory polyneurophic disorder, I hired Mr. Hafeef, who'd worked on another case. Yeah, I know Mr. Hafeef. And we did very well, and I hired him here, but the city took a position that they would not settle a case with me, and therefore he cut me out. Okay. Okay. Can I reserve time? Sure. Absolutely. Yes. Yes, thank you. Thank you. Good morning, Your Honors. I'm Brian Walter, appearing on behalf of the City of Los Angeles. Your Honors, I would like to address, first of all, one of the comments that was made by appellant's counsel about the trial date, and being that he would have appeared for trial on January 28th. The whole point of the ex parte application that he filed in the subsequent status conferences was to indicate he would not be able to appear on January 28th, and he wanted additional time. Well, the judge could have said, no, I'm not going to grant your continuance. Be here or be square. Yes, he could have. I think, though, when you look at the transcript from the status conference. That's usually the way it works. I mean, somebody comes and asks for a continuance, and you say, no, I told you before, the case is not going to be tried, and we're going to trial on the 28th. You either be here or you have somebody else here. End of story. Judge Feist didn't do that. He just said, in response to the ex parte application, which was to continue it, he just said, dismiss. And he gave his good reason. He gave reasons. I understand his reasons very well. Well, he also, though, he didn't just he set a status conference at which he ordered the new trial the counsel who would try the case to appear. And so two attorneys showed up at that status conference on January 3rd. Both of them said they were not available on January 28th to try the case. And in the ex parte, Mr. Peterson had asked to have until set the trial for February 18th, and then when those two attorneys, Mr. Ferris and Mr. Hennig, showed up at the January 3rd status conference, they said, we're not available on February 18th, actually. We're not available until March. Then the next day they filed a document saying we're actually available February 25th, and Judge Feist waited another week or so, I think about six days, to rule on the application. So, well, you're correct that Judge Feist could have waited until the 28th. I think plain Mr. Peterson made it very clear they were not going forward and they were not going to be ready to try the case on January 28th. Judge Feist applied the five-factor test of Jurisch. Is there any requirement under that case that those factors be applied as of the projected date of trial, or was the time that he did this sufficient? I believe that there isn't a specific requirement under that case that those factors be applied as of the date of trial specifically. And I think in this instance, given the number of warnings and really the very detailed reasons that Judge Feist set forth in his order dismissing the case, that he fully satisfied all five of those factors. And I gather the city's position is that notwithstanding the normal practice of waiting until the actual day, since the attorneys that counsel sent to appear at the status conference said they wouldn't be ready, it was just an idle act to wait for the actual day because you'd already been told they weren't going to appear. Is that correct? That's correct. There was also some discussion at the SAS conference about the impact of further trial preparation and the fact that the city- What about his wife? Has she been involved in the litigation at all? I've never- He filed some papers here. Other than that declaration, I've never spoken to her. She had no involvement in the 11 years of litigation. I guess now it's 13 or 14. But yeah, I think that Judge Feist's order really went through the various factors. I'd also remind the court that Judge Feist had many status conferences over the years on this case where every status conference would start off with a comment from Judge Feist about how old the case was, how it was the oldest case or one of the oldest cases on his docket, and how he needed to resolve the case. And so in addition to the very, very specific warnings about dismissal that he issued in 2013, at many prior status conferences, the issue of the age of the case was raised with the parties. I would also point out one of the factors that Judge Feist noted in his ruling was the prejudice to the defendants by the case continuing to be delayed and delayed. And the statute of limitations in the underlying action went back to 2001. And most of the events that were going to be at issue if the case was tried on January 28, 2014, would have been related to the 2001 to 2004 time period. The city continued to face real problems with witnesses dying, retiring, moving away. And I think as Judge Feist noted in his order, this was a much bigger problem for the city than for plaintiffs. So I'll make sure I understand everything. What were the issues to be tried at the trial on the 28th? Well, that's a bit of dispute among the parties. From the city's perspective, the issue to be tried was the off-the-clock overtime claims of the four plaintiffs. So this wasn't a gap time kind of thing? Well, the gap time had already been adjudicated. The city had already gotten partial summary judgment on gap time in 2009. Just all about off-the-clock, which would require people who were knowledgeable about their working habits. Right. And the practical problem the city faced was the plaintiffs could come in and testify about their off-the-clock work. For the city to defend it, the city has to find their supervisors. And trying to find a supervisor of someone from 2001 in 2014 was not exactly an easy task for us at all. And each time this case got delayed, it became more difficult for the city. Unless the court has any other questions? Thank you. You didn't dispute his medical condition, though, did you? We don't have any reason to dispute his medical condition. And the one other thing I'll add on that, I think as the court's noted, his medical condition had been raised since at least 2007, if not before, in the case, and had been the source of various delays in earlier proceedings. Thank you. If I may briefly. I would dispute that 2007 was the beginning of a time when I was not able to work on the case. I managed that case up until I found out that they were trying to have what I call an auction and a class action, which is inappropriate, which is why we filed the papers about an auction. The fact that I was retained counsel, my obligation was to all of the clients, and they had excluded me specifically from every settlement agreement. They've admitted it. It's in the record. They've now admitted it in their most recent attorney's motion. So, Mr. Haft's office, to say 2007 on would be wrong. I became seriously ill with my pancreatitis, and that was in 2013. October 30, I went in for a 14-hour operation where they took everything out, filleted the pancreas, reducted me, replumbed me, put me back together, and for the next 15 days I was in the hospital, out a couple days, back at the hospital. I spent most of the time. Counsel, let me just ask you this. I don't think anybody's disputing the seriousness of your illness or your operation. At least I haven't heard anything. I haven't seen it in any pleadings. What we're really dealing with here is the ability of the court to manage its docket and all the other factors involved here. The city has made the point that, you know, this goes back to the 2001 to 2004 time period. Witnesses are dying, they're leaving, and so on. There's real potential prejudice to the city. Somehow the court has to manage its docket. So even taking in full the seriousness of your operation, the court said, we understand if you can't do it, you've got to get somebody else who's ready, willing, and able to try. When they had the status conference, the people that you sent said, we're not ready, you can't do it then. So what's a judge supposed to do? Well, he should have done what due process notice was to me, laying in a hospital bed, by the way, because I was. He should have said, okay, if you don't show, you're toast. I would have had no problem. If I didn't show, I'd have been toast. But, you know, filing. He doesn't wait until the trial date. You think that's a matter of. I would have had, well, there was a number of steps in between. I had to provide all the court papers, the pretrial, everything ready to be on the docket. If I failed at any one of those, he could have dismissed the case. But we had three lawyers working on that in my absence, and those were not due. In fact, the defendants at that argument asked for a continuance to file their pleadings in the case, and that was granted. In doing that, it also granted our time to do it. All the dates were moved out about a week, which was fine. We were working. That was never given an opportunity to be heard, and that is the fundamental problem I have here. The other fundamental problem I have here is what we're hearing from the city is, oh, wait, we, the plaintiffs, are delaying this case. When Margaret Moreau had this case, I had a summary judgment on her desk, ready within one and a half years to be heard. I filed these cases very aggressively. I was not sick. She took it off calendar for a settlement conference in front of, I believe it was Magistrate Withrop. Then we went back on calendar, and then the case got transferred to Judge Feese, who set the first trial date in 2007. Nothing to do with me. And then it got set again based on the city's motion. Those aren't my motions. The city made more motions to continue this trial than me. With respect. Yes, sir. We're focused on what Judge Feese did in this particular matter. You're covering all kinds of other stuff, all very interesting. But from my perspective, it's not the issue. I think it goes to the five points that are to be considered here. And the first of those is, was there a pattern of delay? The only delay in this case by myself was starting when I had a diagnosis, five stints, surgery in October. Please. I understand. Okay, I get that. But that's the first delay I had. Judge Feese does not agree with you in his findings. He does not agree with you. And I asked for an evidentiary hearing on that and a fairness hearing on that, because I knew he didn't, but there is no evidentiary hearing that was conducted. And the facts that he has are from sitting on a bench with due respect, not knowing what's going on behind the scene, and not having any evidence that goes back beyond the October surgeries. I do not think there was a continuing pattern. And I would tell you, I've never had a continuing pattern problem in my entire career. If there's any questions. Thank you, Your Honor. Thank you, sir. Case just arguably submitted.
judges: Reinhardt, Paez, M. Smith